**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 21-13535 |
| MARIE A. LONA, | ) | Chapter 7 |
|     Debtor. | ) | Judge: Deborah L. Thorne |
| | ) | |
| ADRIANNE LONA, REPRESENTATIVE FOR THE ESTATE OF MARCO A. LONA, DECEASED, | ) | Adversary No. 22-_____ |
|     Plaintiff, | ) | |
| v. | ) | |
| MARIE A. LONA, | ) | |
|     Defendant. | ) | |

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF A DEBT AND OBJECTION TO DISCHARGE**

NOW COMES Adrianne Lona, Representative for the Estate of Marco A. Lona ("**Plaintiff**" or "**Marco's Estate**"), by and through her attorneys, E. Philip Groben and Gensburg Calandriello & Kanter, P.C., and files this Complaint to Determine Dischargeability of a Debt and Objection to Discharge ("**Complaint**") against Marie A. Lona ("**Defendant**" or "**Debtor**"). As for its Complaint, Plaintiff states as follows:

**PARTIES AND JURISDICTION**

1. Adrianne Lona is the Supervised Administrator of the Estate of Marco Lona, Deceased, pursuant to the Letters of Office entered by the Circuit Court of Cook County, Illinois in Case No. 2019P004345.

2. Defendant is an individual who resides in Illinois and, on November 30, 2021 (the "**Petition Date**"), filed a voluntary petition for relief under Chapter 13 of Title 11, United States

-1-

Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Illinois ("**Bankruptcy Court**") commending Case No. 21-13535 (the "**Bankruptcy Case**"), which was converted to one under Chapter 7 on February 23, 2022.

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 157 and 1334(b). This is an action which arises under the Bankruptcy Code and is related to the Bankruptcy Case. This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I), and (J).

4. Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. § 1409(a).

5. Plaintiff consents to the entry of final orders or judgment by the Bankruptcy Court.

6. This action is brought pursuant to Sections 523(a)(4), 523(a)(6), 727(a)(3), 727(a)(4), and 727(a)(6), of the Bankruptcy Code and Rules 4004(a) and (c), 4007(a) and (c) and 7001(4) and (6) of the Federal Rules of Bankruptcy Procedure.

**FACTS COMMON TO ALL COUNTS**

7. From December 12, 1986, until his death, Marco A. Lona ("**Marco**") owned the real property commonly known as 9435 Greenwood Ave., Munster, Indiana (the "**Munster Property**").

8. On July 31, 1997, Marco signed the Marco Antonio Lona Revocable Living Trust dated July 31, 1997 (the "**Marco Trust**").

9. Marco signed a Last Will on July 31, 1997, which instructed that Marco's assets are to be distributed to the Marco Trust upon Marco's death.

10. Marco lived in the Munster Property with his wife, Mary Ann Lona, until her death on October 24, 2016.

11. Prior to the death of Mary Ann Lona, Marco had significant health complications and Mary Ann Lona served as his primary caregiver and handled all of his financial affairs.

12. Following Mary Ann Lona's death, and after October 24, 2016, Defendant started to exercise complete control and authority over all of Marco's personal and financial affairs.

13. On and after October 24, 2016, Marco was entirely dependent on Defendant to manage his personal and financial affairs as a result of his dementia and significant health complications.

14. On and after October 24, 2016, there existed a vast disparity in age and health between Defendant and Marco.

15. On and after October 24, 2016, a fiduciary relationship existed between Defendant and Marco in that Defendant made medical decisions for Marco, arranged for Marco's placement and care, and handled all of Marco's finances.

16. On and after October 24, 2016, Defendant owed fiduciary duties to Marco.

17. On the date of Mary Ann Lona's death, Marco was admitted to the hospital, where he remained for approximately one week before he was discharged to a rehab facility in Munster, Indiana.

18. Marco never returned to the Munster Property after October 24, 2016.

19. On November 4, 2016, just days after Mary Ann Lona's death, Marco purportedly executed a Durable General Power of Attorney ("**Property POA**") and Indiana Power of Attorney for Health Care Decisions and Appointment of Health Care Representative ("**Health Care POA**"), appointing Defendant as agent thereunder. A copy of the Property POA and Health Care POA are attached hereto as **Exhibit A**.

20. On November 4, 2016, Dr. Steven M. Bayer, D.O. determined that Marco was incapable of making financial and medical decisions due to the severity of his Alzheimer's disease. A copy of the correspondence of Dr. Steven M. Bayer dated November 4, 2016, and the Affidavit of Dr. Steven M. Bayer are attached hereto as **Exhibit B**.

21. On and after November 4, 2016, a fiduciary relationship existed between Defendant and Marco, in that Defendant made medical decisions for Marco, arranged his placement and care, and handled all of Marco's finances and otherwise acted as agent under his Property POA and Healthcare POA.

22. On and after November 4, 2016, Defendant owed fiduciary duties to Marco.

23. On November 11, 2016, Marco was removed as Trustee of the Marco Trust and Defendant was appointed as Successor Trustee. A copy of the Removal of Trustee by Trust Committee is attached hereto as **Exhibit C**.

24. On and after November 4, 2016, Defendant breached her fiduciary duties to Marco by: (i) expending Marco's funds for her personal benefit, (ii) executing beneficiary designations for her personal benefit, (iii) transferring assets in a manner that benefitted Defendant to the detriment of Marco and contrary to Marco's estate plan, (vi) failing to account to Marco, and (v) failing to assert known claims on Marco's behalf to Marco's detriment and her personal benefit.

25. On January 8, 2017, Defendant signed, as Marco's Attorney-in-Fact, a Transfer on Death Deed (the "**Transfer on Death Deed**") which conveyed the Munster Property mentioned above to the Defendant upon Marco's death.

26. The Transfer on Death Deed also stated that if the Defendant should predecease Marco, then the Real Property would pass to the Defendant's lineal descendants per stirpes.

27. Execution of the Transfer on Death Deed allowed Defendant to remove the Munster Property from the Marco Estate and in so doing avoid an accounting of the asset and extinguished any interest the other beneficiaries of the Marco Trust may have had in the sale proceeds of the Munster Property.

28. Marco remained in the Munster, Indiana rehabilitation facility from October 24, 2016, until January 2017, at which time he was discharged to Belmont Village, a senior living community in Oak Park, Illinois, where he remained until his death on March 18, 2019, from complications of dementia.

29. In addition to those described above, between November 4, 2016, and Marco's death, Defendant took the following improper actions:

  a. Executed a beneficiary designation on Marco's savings account at Centier Bank naming herself as the sole payable on death ("**POD**") beneficiary (see **Exhibit D**);

  b. Expended Marco's funds to improve the Munster Property, including more than $40,000.00 to improve a pool at the real estate (see **Exhibit E**);

  c. Executed checks to herself amounting to at least $49,823.00 (see **Exhibit F**); and

  d. Failed to disclaim Mary Ann Lona's will, in which Defendant was a named legatee, while Marco was not.

30. All while Defendant was making significant disbursements of Marco's assets to improve real estate that Defendant expected to receive by virtue of a TOD instrument Defendant executed herself, Defendant represented to Marco's other children, including Administrator, that Marco's assets were quickly diminishing and requested they contribute to the costs of his care. See **Exhibit G**.

31. Defendant constructed and executed a plan to funnel Marco's assets in a manner that would benefit herself, contrary to Marco's estate plan and wishes, in a flagrant abuse of power and breach of fiduciary duties.

32. Due to Defendant's improper conduct, Plaintiff filed two separate state court actions against Defendant seeking, among other forms of relief, recovery of assets from Defendant.

33. The first state court action filed against Defendant is styled *In re Marco Lona, deceased*, pending in the Probate Division of the Circuit Court of Cook County, Illinois (the "**Illinois Court**"), assigned Case No. 2019-P-4345 (the "**Illinois Action**") was filed in 2019.

34. In the Illinois Action, Plaintiff sought actual damages arising from Defendants' breach of fiduciary duties and financial exploitation, for which Plaintiff requested that Defendant be disinherited and for punitive damages.

35. The second state court action filed against Defendant is styled *Adrianne Lona as Personal Representative of the Estate of Marco A. Lona, deceased*, pending in the Probate Division of the Circuit Court of Lake County, Indiana (the "**Indiana Court**"), assigned Case No. 5C01-2006-ES-000119 (the "**Indiana Action**") was filed in 2020.

36. On September 7, 2021, Indiana Court, after hearing arguments on the Marco's Estate's Motion to Compel Debtor to Provide Complete Accounting, held that i) the prior accounting provided by the Debtor was incomplete, and ii) the Debtor had 30 days in which to prepare an accounting that addressed production deficiencies in her original accounting with respect to nine of Marco's accounts.

37. On September 30, 2021, the Indiana Court entered an order finding that the Debtor has "failed to demonstrate just cause to excuse her failure to render a complete and timely

accounting as required under Indiana Code § 30-5-6-4(h) and this Court's Order executed on December 30, 2020" and "did not demonstrate just cause to excuse her failure to render a complete and timely accounting as evidenced by Petitioner's multiple requests and multiple deadlines and extensions established by this Court's rulings."

38. As of the Petition Date, the Debtor had not provided the Indiana Court with a full accounting of her transactions concerning Marco's assets, and on December 23, 2021, prior to receiving notice of this bankruptcy case, the Marco's Estate filed a Motion to Show Cause as to why the Debtor should not be held in contempt of court for failure to complete the accounting and pay attorneys fees awarded by the court in prior orders.

39. The Defendant's refusal to comply with orders of court in the Indiana Action continued after the Petition Date, and on March 18, 2022, the Indiana Court issued an order holding the Defendant in Contempt of Court.

40. A copy of the orders entered by the Indiana Court on September 7, 2021, September 30, 2021, and March 18, 2022, are attached hereto as **Exhibit H**.

41. In the Illinois Action, during the months prior to the Petition Date, the Debtor's repeated refusal to appear before the Illinois Court in response to that court's demands also lead to an issuance of a rule to show cause.

42. The Illinois Court issued an order commanding the Debtor to appear before it on October 20, 2021, and when the Debtor failed to appear as ordered, the Circuit Court entered an order issuing a Rule so Show Cause against the Debtor and ordering her to appear before the Court on December 2, 2021.

43. On December 2, 2021, the Debtor did not appear before the Illinois Court and was found to be in contempt of court.

44. The Illinois Court allowed the Debtor to cure her contempt by appearing on December 16, 2021, and when the Defendant did not appear before the Illinois Court on December 16, 2021, it found her to be in continued contempt.

45. The Illinois Court awarded Marco's Estate's attorneys fees to be paid by Defendant related to the her continued contempt.

46. The Illinois Court also issued a warning that should the Debtor not appear on January 7, 2022, it would issue an order for a body attachment.

47. On January 7, 2022, the Debtor did not appear and the Illinois Court found her to be in continued contempt.

48. The Court did not issue a body attachment but did suspend the Debtor's authority to act as a Trustee for the Marco Trust and ordered Defendant to turnover trust assets to Adrianne Lona as a Special Trustee for the Trust.

49. A copy of the above-referenced orders entered in the Illinois Action are attached hereto as **Exhibit I**.

**COUNT I – DETERMINATION OF NON-DISCHARGEABILITY OF DEBT**
**11 U.S.C. § 523(a)(4): Fraud and Defalcation in a Fiduciary Capacity**

50. Plaintiff fully incorporates all preceding paragraphs as if fully set forth herein.

51. There was a significant difference in knowledge between the Defendant, who from 1991 through 2013 was licensed to practice law in the State of Illinois and Marco, who was in ill-health and suffering from dementia.

52. At all times since October 24, 2016, the Defendant operated in a fiduciary capacity to Marco.

53. At all times since November 11, 2016, Defendant operated in a fiduciary capacity to Marco and the beneficiaries of the Marco Trust when she was appointed as the successor trustee to the Marco Trust.

54. The Defendant committed fraud and defalcation in her fiduciary capacity when she:

   a. Executed a TOD instrument naming herself as beneficiary of the Munster Property;

   b. Executed a beneficiary designation on Marco's savings account at Centier bank naming herself as the sole POD beneficiary;

   c. Expended more than $40,000 of Marco's funds to improve the Munster Property;

   d. Executed checks to herself from Marco amounting to at least $49,823.00;

55. Defendant understood that the above-described actions were in breach of her fiduciary obligations owed to Marco.

56. The above-described actions of Defendant demonstrate a gross recklessness with respect to Defendant's fiduciary obligation to Marco.

57. The Plaintiff has been injured by Defendant's actions, plus costs and fees related to Illinois Action and Indiana Action.

58. Accordingly, pursuant to 11 U.S.C. § 523(a)(4) the Defendant is not entitled to a discharge of her debts owed to Plaintiff and described herein.

**COUNT II – DETERMINATION OF NON-DISCHARGEABILITY OF DEBT
11 U.S.C. § 523(a)(4): Embezzlement**

59. Plaintiff fully incorporates all preceding paragraphs as if fully set forth herein.

60. At all times since October 24, 2016, the Defendant controlled Marco's financial and medical activities and Marco depended upon the Defendant for management of his assets and financial condition.

61. The Defendant misappropriated Marco's property for her own benefit when she:

    a. Executed a TOD instrument naming herself as beneficiary of the Munster Property;

    b. Executed a beneficiary designation on Marco's savings account at Centier bank naming herself as the sole POD beneficiary;

    c. Expended more than $40,000 of Marco's funds to improve the Munster Property;

    d. Executed checks to herself from Marco amounting to at least $49,823.00;

62. The Debtor appropriated Marco's property with fraudulent intent or deceit when she:

    a. Executed a TOD instrument naming herself as beneficiary of the Munster Property;

    b. Executed a beneficiary designation on Marco's savings account at Centier bank naming herself as the sole POD beneficiary;

    c. Expended more than $40,000 of Marco's funds to improve the Munster Property;

    d. Executed checks to herself from Marco amounting to at least $49,823.00;

63. The Plaintiff has been injured by Defendant's actions, plus costs and fees related to Illinois Action and Indiana Action.

64. Accordingly, pursuant to 11 U.S.C. § 523(a)(4) the Defendant is not entitled to a discharge of her debts owed to Plaintiff and described herein.

### COUNT III – DETERMINATION OF NON-DISCHARGEABILITY OF DEBT
### 11 U.S.C. § 523(a)(6): Exploitation of Elderly

65. Plaintiff fully incorporates all preceding paragraphs as if fully set forth herein.

66. At all times since October 24, 2016, the Defendant controlled Marco's financial and medical activities and Marco depended upon the Defendant for management of his assets and financial condition.

67. Marco was 88 years old when he was determined by a doctor to suffer from dementia and resulted in him having a limited comprehension of financial matters.

68. The Defendant injured Plaintiff when she did the following:

   a. Executed a TOD instrument naming herself as beneficiary of the Munster Property;

   b. Executed a beneficiary designation on Marco's savings account at Centier bank naming herself as the sole POD beneficiary;

   c. Expended more than $40,000 of Marco's funds to improve the Munster Property;

   d. Executed checks to herself from Marco amounting to at least $49,823.00;

69. The Defendant's actions listed above were "willful" because all of the actions and the resulting injuries were intentional and done for the benefit of the Debtor.

70. The Defendant's actions listed above were "willful" because the Defendant knew that an injury to Marco was substantially certain to result from her actions.

71. All of the actions and the resulting injuries were intentional and done for the benefit of the Debtor.

72. The Debtor's actions listed above were "malicious" because there was a significant difference in knowledge between the Defendant, who was an attorney, and Marco, who was determined by a doctor to have dementia and limited comprehension pertaining to financial matters, and the Defendant used this difference in conscious disregard of her duties and without just cause to injure Marco and his estate.

73. Accordingly, pursuant to 11 U.S.C. § 523(a)(6) the Defendant is not entitled to a discharge of her debts owed to Plaintiff and described herein.

**COUNT V – OBJECTION TO DISCHARGE**
**11 U.S.C. § 727(a)(6): Refusal to Obey Orders of Court**

74. Plaintiff fully incorporates Paragraphs 1 through 55 as though set forth herein.

75. Within the Indiana Action, the Plaintiff is seeking the Debtor to account for her activities while she served as attorney-in-fact for Marco.

76. Defendant has yet to comply with the above referenced orders in the Indiana Action as of the filing of this Complaint.

77. Defendant has yet to comply with the above referenced orders in the Illinois Action as of the filing of this Complaint.

78. Prior to the conversion of the Bankruptcy Proceeding to one under Chapter 7, the First Meeting of Creditors held pursuant to 11 U.S.C. § 341(a) was set to be held on December 27, 2021, at which the Debtor failed to appear. (Bankruptcy Docket No. 5).

79. Following conversion of the Bankruptcy Proceeding to under Chapter 7, the First Meeting of Creditors held pursuant to 11 U.S.C. § 341(a) was set to be held on March 25, 2022. (Bankruptcy Docket No. 40).

80. Defendant failed to appear on March 25, 2022, and the First Meeting of Creditors was continued to May 27, 2022. (Bankruptcy Docket No. 47).

81. On April 26, 2022, Ira Bodenstein, the Chapter 7 Trustee assigned to the Bankruptcy Case ("**Trustee Bodenstein**"), filed a Motion to Compel Defendant to appear at the continued First Meeting of Creditors. (Bankruptcy Docket No. 55).

82. Trustee Bodenstein's Motion to Compel Defendant to appear at the continued First Meeting of Creditors was granted on May 5, 2022. (Bankruptcy Docket No. 57).

83. Trustee Bodenstein caused a copy of the order granting the motion to compel

84. On May 27, 2022, Defendant failed to appear at the continued Fired Meeting of Creditors and Trustee Bodenstein continued the First Meeting of Creditors to July 28, 2022. (Bankruptcy Docket No. 64).

85. On July 12, 2022, Trustee Bodenstein filed a Motion for Rule to Show Cause as to why Defendant should not be held in Contempt. (Bankruptcy Docket No. 65).

86. On July 21, 2022, this Court granted the Trustee's Motion for Rule to Show Cause. (Bankruptcy Docket No. 68).

87. The Defendant received notice of the Trustee's Motion to Compel Defendant to appear at the continued First Meeting of Creditors.

88. The Defendant received a copy of the order granting Trustee's Motion to Compel Defendant to appear at the continued First Meeting of Creditors.

89. The Defendant received notice of the Trustee's Motion for Rule to Show Cause.

90. The Defendant received a copy of the order granting Trustee's Motion for Rule to Show Cause.

91. The Defendant's failure to comply with the orders entered by the Bankruptcy Court is a continuation of the Defendant's refusal to comply with orders entered in the Illinois Action and Indian Action.

92. The Defendant's failure to comply with the orders entered by the Bankruptcy Court is willful, intentional disobedience and dereliction of a debtor's obligations under Title 11.

93. Accordingly, pursuant to 11 U.S.C. § 727(a)(6) this Court should enter judgment against the Defendant denying Defendant a discharge.

### COUNT IV – OBJECTION TO DISCHARGE
### 11 U.S.C. § 727(a)(3): Concealment of Recorded Information

94. Plaintiff fully incorporates Paragraphs 1 through 55 as though set forth herein.

95. Upon information and belief, Defendant failed to provide the Chapter 13 Trustee assigned to the Bankruptcy Case, Marilyn O. Marshall, with copies of the Defendant's tax returns and pay advices.

96. Upon information and belief, Defendant refused to provide Trustee Bodenstein with copies of the Defendant's tax returns, pay advices, and state issued photo identification.

97. Defendant refused to attend any First Meeting of Creditors in the Bankruptcy Case.

98. The Defendant's failure to comply with the orders entered by the Bankruptcy Court is a continuation of the Defendant's refusal to comply with orders entered in the Illinois Action and Indian Action.

99. The Defendant's failure to comply with the orders entered by the Bankruptcy Court is willful, intentional disobedience and dereliction of a debtor's obligations under Title 11.

100. Accordingly, pursuant to 11 U.S.C. § 727(a)(3) this Court should enter judgment against the Defendant denying Defendant a discharge.

### COUNT V – OBJECTION TO DISCHARGE
### 11 U.S.C. § 727(a)(4): False Oath

101. Plaintiff fully incorporates Paragraphs 1 through 55 as though set forth herein.

102. The Defendant filed schedules A/B, C, D, and E/F on December 20, 2021.

103. The Defendant filed her Statement of Financial Affairs on December 20, 2021.

104. The Defendant did not list the Plaintiff as a creditor in this bankruptcy proceeding on Schedules D or E/F ("**Misrepresentation 1**").

105. The Defendant did not disclose the lawsuits brought by Plaintiff seeking the recovery of assets from Defendant to wit, the Illinois Action and Indiana Action, in the Defendant's Statement of Financial Affairs ("**Misrepresentation 2**")

106. Defendant's Schedule A discloses a one-half ownership interest in the real property commonly known as 1924 Potomac Ave., Chicago, IL (the "**1924 Potomac**") ("**Misrepresentation 3**").

107. Defendant is actually the sole owner of 1924 Potomac.

108. Defendant's Schedule A provides a value of the Real Property of $1,000,000.00 and a value of Debtor's interest in the Real Property of $500,000.00. ("**Misrepresentation 4**").

109. The value of Defendant's interest in the Real Property is actually $1,000,000.00.

110. Defendant's Schedule A does not identify who owns the other one-half interest in the Real Property. ("**Misrepresentation 5**").

111. Debtor's Schedule C claims an exemption in the Real Property in the amount of $500,000.00 pursuant to 735 ILCS 5/12-112. ("**Misrepresentation 6**").

112. The Defendant is not entitled to claim an exemption as to her interest in the Real Property pursuant to 735 ILCS 5/12-112.

113. Defendant is not entitled to an exemption as to the equity in 1924 Potomac pursuant to 735 ILCS 5/12-112.

114. The Defendant did not sign her schedules or statement of financial affairs under penalty of perjury.

115. The Defendant did not attend her First Meeting of Creditors.

116. Misrepresentation 1 bears a relationship to the Defendants' bankruptcy estate or concerned the discovery of assets or the existence or disposition of the Defendants' property, and the Defendant knew or should have known Misrepresentation 1 was false at the time it was made.

117. Misrepresentation 2 bears a relationship to the Defendants' bankruptcy estate or concerned the discovery of assets or the existence or disposition of the Defendants' property, and the Defendant knew or should have known Misrepresentation 2 was false at the time it was made.

118. Misrepresentation 3 bears a relationship to the Defendants' bankruptcy estate or concerned the discovery of assets or the existence or disposition of the Defendants' property, and the Defendant knew or should have known Misrepresentation 3 was false at the time it was made.

119. Misrepresentation 4 bears a relationship to the Defendants' bankruptcy estate or concerned the discovery of assets or the existence or disposition of the Defendants' property, and the Defendant knew or should have known Misrepresentation 4 was false at the time it was made.

120. Misrepresentation 5 bears a relationship to the Defendants' bankruptcy estate or concerned the discovery of assets or the existence or disposition of the Defendants' property, and the Defendant knew or should have known Misrepresentation 5 was false at the time it was made.

121. Misrepresentation 6 bears a relationship to the Defendants' bankruptcy estate or concerned the discovery of assets or the existence or disposition of the Defendants' property, and

the Defendant knew or should have known Misrepresentation 6 was false at the time it was made.

122. The Defendant intended that the Trustees and parties-in-interest rely upon Misrepresentations 1 through 6 when Defendant made Misrepresentations 1 through 6.

123. The cumulative effect of Misrepresentations 1 through 6 evidence a reckless disregard for the truth.

124. Trustee Bodenstein is an officer of the estate entitled to possession of any recorded information, including books, documents, records, and papers, relating to the Defendant's property or financial affairs.

125. The Defendant has an obligation arising under Title 11 to sit for examination at a meeting of creditors conducted pursuant to 11 U.S.C. § 341(a).

126. The Defendant has an obligation to provide Trustee Bodenstein with certain recorded information including tax returns, pay advices, and personal identification in advance of the meeting of creditors conducted pursuant to 11 U.S.C. § 341(a).

127. The Defendant has an obligation to provide Trustee Bodenstein with such other recorded information as the Trustee may require relating to the Defendant's property or financial affairs.

128. The Defendant has withheld from Trustee Bodenstein recorded information and oral testimony regarding her property or financial affairs.

129. Accordingly, pursuant to 11 U.S.C. § 727(a)(4) this Court should enter judgment against the Defendant denying Defendant a discharge.

WHEREFORE, Adrianne Lona, Representative for the Estate of Marco A. Lona, respectfully requests this Court enter judgment in her favor and against Maria A. Lona, and for such other relief this Court deems just and equitable.

        Respectfully Submitted,

        Adrianne Lona, Representative for
        the Estate of Marco A. Lona.

By:   /s/ E. Philip Groben
       One of her Attorneys

E. Philip Groben (ARDC# 6299914)
Email: pgroben@gcklegal.com
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams St., Ste. 2425
Chicago, Illinois 60606
Phone:  312-263-2200
Fax:  312-263-2242